UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KENNETH A. WESTBROOKS, | ) | CASE NO. 10-10672 |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| KENNETH A. WESTBROOKS and wife, | ) | |
| SHERRIE P. WESTBROOKS, | ) | |
| | ) | |
| Plaintiffs, | ) | 10-_____ |
| | ) | Adversary Proceeding |
| vs. | ) | |
| | ) | |
| FNB UNITED CORP., a holding company | ) | |
| for COMMUNITYONE BANK, N.A., | ) | |
| DANIEL J. GILLESPIE, III, | ) | |
| NANCY W. GILLESPIE, and | ) | |
| BEVERLY A. CORBETT, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT TO DETERMINE VALIDITY
OF LIENS AND PROPERTY OF THE ESTATE**

NOW COMES, Kenneth A. Westbrooks, Debtor in the above-captioned proceeding and his wife, Sherrie P. Westbrooks, by and through counsel, and do hereby complain of the Defendants, CommunityOne Bank, N.A. (hereinafter "Bank") as follows:

1.    On April 13, 2010, Kenneth A. Westbrooks, Debtor in the above-captioned proceeding (hereinafter "Debtor") filed a petition for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Middle District of North Carolina.

2.    The Debtor and his wife, Sherrie P. Westbrooks, (hereinafter "Wife") are residents of Alamance County, North Carolina.

3.    Upon information and belief, Bank is a bank organized under the laws of the State of North Carolina and doing business in Alamance County, North Carolina.

4.     Bank has made an appearance in the bankruptcy case, through counsel, and has filed a Proof of Claim and an Objection to Confirmation and to Debtor's Claim of Exemptions.

5.     Upon information and belief, Daniel J. Gillespie, III and wife, Nancy W. Gillespie are residents of Guilford County, North Carolina.

6.     Upon information and belief, Beverly A. Corbett is a resident of Alamance County, North Carolina.

7.     This matter is a core proceeding pursuant to 18 U.S.C. § 157(b)(2)(B), (k), (l) and (o) and other applicable sections of the United States Bankruptcy Code.  Venue is proper pursuant to 18 U.S.C. §§ 1334, 1408 and 1409.


## FACTS

1.     On February 28, 2001, Keck Co. Acquisition, Inc. and Keck Co., Inc. executed and delivered to Alamance National Bank a note in the principal sum of $950,000.

2.     Contemporaneously with the execution of the note of February 28, 2001, the Debtor and Wife were required to execute and deliver to Alamance National Bank a certain unconditional guarantee.

3.     Contemporaneously with the execution of the unconditional guarantee, Debtor and Wife were required to execute and deliver to the Trustee named therein, a Deed of Trust which was recorded March 1, 2001 in Book 1473 at Page 898 and re-recorded on April 2, 2001 in Book 1487 at Page 509 of the Alamance County Public Registry.

4.     The application for credit was filed on behalf of Keck Co. Acquisition, Inc. and Keck Company and was signed and filed by the members and owners of Keck Co. Acquisition, Inc. which were the debtor a Dan Gillespie and Andrew Corbett.  The purpose of the loan was for the acquisition of Keck Co. by Keck Co. Acquisition, Inc.

5.     Debtor's Wife is not a member of Keck Co. Acquisition, Inc., has never been a member of Keck Co. Acquisition, Inc., is not an officer of Keck Co. Acquisition, Inc., has never been an officer of Keck Co. Acquisition, Inc. and at no time held any ownership interests in Keck Co. Acquisition, Inc.

6.     Debtor's Wife has never been an employee of Keck Co. Acquisition, Inc. and has received no direct benefit from Keck Co. Acquisition, Inc. other than the fact that her husband is an owner and member and was employed by Keck Co. Acquisition, Inc.

7.     Bank required the wives of the Debtor, Dan Gillespie and William Andrew Corbett to sign unconditional guarantees along with the husbands in order to obtain the loan.

2

8.      Prior to acquiring these guarantees by the wives, no signing of independent credit worthiness or unworthiness was made by Alamance National Bank.

9.      No explanation was made or offered to the Debtor, Mr. Gillespie or Mr. Corbett as to why they would not be credit worthy independently before the wives to sign the unconditional guarantees.

10.     Along with the unconditional guarantees, the wives were required to sign deeds of trust on certain real estate to secure the unconditional guarantees.

11.     Prior to the signing of the deeds of trust, again there was no independent inquiry as to the husbands' individual credit worthiness and no explanation to the husband as to the reasons they were found to be individually non-creditworthy without the guarantee and deeds of trust signed by the wives.

12.     On April 10, 2003, Keck Acquisitions, Inc. executed and delivered to Alamance National Bank a Modification Agreement.

13.     Pursuant to the Modification Agreement, Alamance National Bank did not give the wives, as guarantors, notice of the modification agreement.  The Bank continued to hold the wives liable for the modified agreement despite having not made an independent determination as to the creditworthiness of the husbands and continued to have the wives sign a deed of trust without an independent examination as to creditworthiness of the husbands.

14.     On April 20, 2004, Keck Co. Acquisition, Inc. executed and delivered to Alamance National Bank a note in the principal sum of $300,750.00.  Contemporaneous to the execution of the note, Alamance County Bank required the Debtor and Wife to execute and deliver to Alamance National Bank a guaranty.

15.     Prior to Alamance National Bank requiring Wife to sign an unconditional guaranty, Alamance National Bank made no inquiry or determination of the Debtor's independent creditworthiness and gave no explanation of the denial of credit based on the lack of independent creditworthiness of the Debtor to the Debtor.

16.     On April 10, 2004 and April 10, 2005, Keck Company Acquisition, Inc., the Debtor and Wife executed and delivered to Alamance National Bank Modification Agreements to the April 10, 2004 note.  Alamance National Bank, on these Modification Agreements continued to require the Wife's signature on the guarantee and deeds of trust without providing any indication or finding that the Debtor was not independently creditworthy or explanation as to the Debtor was not independently creditworthy.

17.     On May 1, 2006, Keck Co. Acquisition, Inc. executed to First National Bank and Trust a note thereby renewing the obligations of April 10, 2004 and April 10, 2005.  The loan is not signed by the Debtor or by the Debtor's Wife; however, the note purports that it is the new note as the successor in interest to the initial April 2004 and April 2005 notes and therefore the

3

guarantees of the Debtor and Debtor's Wife are in effect as to this note. However, neither the Debtor nor Debtor's Wife signed the May 1, 2006 note.

18.    Bank acquired the notes from Alamance National Bank and is now attempting to collect on the guarantees.

19.    On June 23, 2009, Keck Co. Acquisition, Inc., and Keck Co., Inc. each filed a bankruptcy petition under Title 11, Chapter 7 of the United States Bankruptcy Code, case numbers 09-11143 and 09-11144, respectively.

20.    On August 21, 2009 the Trustee of Keck Co., Inc. held an auction sale of all of the assets of Keck Co., Inc. pursuant to Section 363 of the United States Bankruptcy Code. See Exhibits "A1" and "A2".

21.    Bank, as successor in interest to Alamance National Bank, filed a Motion for Order Authorizing Sale of Property Free and Clear of Liens and Interests and Transferring Claims of Liens or Interests to Proceeds of Sale Pursuant to 11 U.S.C. § 363 claiming ownership interest in the assets to be sold. The Trustee and Bank agreed via consent order to allow the sale and to transfer the claims of liens to the proceeds of the sale. See Exhibit "B". The liens claimed by Bank were part of the obligations guaranteed by the Plaintiffs. Upon information and belief there has been no distribution of the funds the Trustee is holding with Bank's liens purportedly attached.

22.    Upon information and belief, Bank took action to take possession and control of a certificate of deposit placed by Andrew Corbett as security for the obligation he guaranteed to Keck Co. Acquisition, Inc. which is the same note purportedly guaranteed by the Debtor and Wife.

23.    The Debtor and Wife have made repeated requests for a complete up-to-date accounting of the outstanding obligations owed by Debtor and Wife indicating and including payments received from the Chapter 7 Trustee of Keck Acquisition Co. Inc., Keck Co., Inc. and from those funds seized due to be being placed as security by Andrew Corbett and any other payments received by Bank on the debt obligation.

24.    Other than the guarantee of the debts to Bank and the secured debts on their residence, the Debtor and his Wife have no joint debts.


### FIRST CAUSE OF ACTION
### Determination that Debt and Guarantee From Sherrie P. Westbrooks Was Obtained in Violation of the Equal Credit Opportunity Act and as Such Should be Found to be Void

25.    The above-numbered paragraphs 1-24 are hereby incorporated as if fully set forth herein.

26.     The Equal Credit Opportunity Act (hereinafter "ECOA") as set forth in 15 U.S.C. 1691 et seq., states that "It shall be unlawful for any creditor to discriminate against applicant, with respect to any aspect of the credit transaction. . . on the basis of. . . marital status." 15 U.S.C. § 1691 (a)(1)

27.     Regulation B, 12 C.F.R. 202.7(d)(1) (2010) states that a creditor is prohibited from requiring an individually creditworthy applicant to obtain his or her spouses signature on a credit instrument.  A guarantor expressly falls within the meaning of "applicant" and therefore can assert an ECOA violation. Cite 12 C.F.R. 202(e) (2010).

28.     Prior to requiring a spouse to sign a credit application jointly or guarantee a spouse's credit application, a bank must make a finding that the individual spouse was not individually creditworthy.

29.     The Bank must explain to the non-applicant spouse the individual spouse why they are not individually credit worthy.

30.     Any attempt to require the applicant's spouse to sign a guaranty or cosign on a credit application without taking the first two steps unless the spouse voluntarily chose to sign the initial credit application is a violation of the ECOA.

31.     Alamance National Bank and its successor entities never made an individual determination on the Debtor's independent creditworthiness.  Alamance National Bank and its successors in interest did not ever make an explanation to the Debtor explaining that he was not independently creditworthy and why.

32.     Alamance National Bank and its successors in interest, upon receipt of the application by Keck Acquisition and potential guaranties by the members and owners of Keck Acquisition, Inc. required that the owners and the members' spouses sign guaranties of that debt without making any inquiry as to the individual owners and members' individual creditworthiness.

33.     As the guaranty was obtained in violation of the ECOA, the guaranty is invalid and the debt asserted by Bank against Sherrie P. Westbrooks is invalid and may not be enforced.

34.     As the deed of trust against the real estate owned by Sherrie P. Westbrooks was obtained as part of the illegal obtaining of her guaranty in violation of the ECOA, the deeds of trust are also invalid as part of the violation.

35.     Accordingly, the main claim of Bank should be deemed invalid as to any property owned as tenancy by the entireties by the Debtor and Wife.  Further, the deed of trust securing the property to Bank is invalid and is thereby unsecured as to that property and there is no debt owed by Sherrie B. Westbrooks, jointly with the Debtor pursuant to the guarantee agreements to Bank.

## SECOND CAUSE OF ACTION
### Request for Accounting and Marshalling of Assets
### Secured to CommunityOne Bank

36.     The above numbered paragraphs 1-35 are hereby repled as if fully set forth herein.

37.     The obligations owed by the Debtor to Bank are guarantees for obligations owned by the bankrupt entities known as Keck Co. Acquisition, Inc. and Keck Co., Inc.

38.     Both Keck Co. Acquisition, Inc. and Keck Co. Inc. have filed Chapter 7 bankruptcy petitions and are being liquidated by a Chapter 7 Trustee.

39.     The bankruptcy case of Keck Co. Acquisition, Inc. is an asset case.

40.     Upon information and belief, there are assets which Bank is claiming a right of security in which have been sold by the Chapter 7 Trustee pursuant to § 363 of the Bankruptcy Code.

41.     Upon information and belief, the assets were sold by agreement with Bank whereby Community Bank would receive a portion of the proceeds of the sale.

42.     The Debtor has requested an accounting from Bank to show what funds have been paid by the Chapter 7 Trustee and to show what funds are due from the Chapter 7 Trustee on behalf of this debt.

43.      Bank seized a certificate of deposit which is pledged as security by Andrew Corbett on behalf of the debt owed to Bank upon his guaranty for the obligations for Keck Co. Acquisition, Inc.  The value of the CD was $100,000.

44.     The Debtor has requested an accounting of Bank showing how the value of this asset was applied to the outstanding obligation in order to adequately determine what obligations are left owing to Bank by the Debtor and what right of contribution the Debtor may owe to Andrew Corbett.

45.     The Debtor respectfully requests this Court enter an order requiring Bank to provide a detailed accounting setting forth all payments made on behalf of the outstanding obligations including those received from the Chapter 7 Trustee, those received from securities seized by Bank and other guarantor or any other party on behalf of these debts.

46.     There are certain accounts receivable owed to Keck Co., Inc upon which Bank has claimed a security interest.  The Debtor is of the belief that many of these accounts are collectable.  Debtor has informed the Trustee for Keck Co., Inc of his belief and offered to assist the Trustee in any way he can to collect on these accounts receivable. The collection of these accounts receivable would reduce the obligation claimed to be owed by the Debtor and Wife to Bank.

47. The Debtor also respectfully requests that this Court require that the assets of Keck Co. Acquisition, Inc. and Keck Co., Inc. be fully administered and the distributions to Bank be fully determined prior to any final determination as to the full extent of the outstanding obligations owed by any guarantors on the obligations guarantees of the Keck Co. Acquisition, Inc. obligation to Bank.

## THIRD CAUSE OF ACTION
### Objection to Claim of Community One for Failure to Mitigate Damages

48. The above number paragraphs are repled as if fully set forth herein.

49. Bank has not taken action to properly determine its claim in the Keck Co. Inc. bankruptcy case and apply those funds towards the obligation owed by Keck Co., Inc, and guaranteed by the Plaintiffs. Accordingly the obligation owed by the Plaintiffs should be reduced by the amount recovered by the Trustee of Keck Co., Inc. upon which Bank has a claim of lien.

50. Further, Bank as part of the arrangement to have the trustee sell the equipment upon which Bank claimed a lien, Bank gave the Trustee of Keck Co., Inc, a carve out of ten (10) percent of the proceeds to go to the estate. These "carve out" proceeds should have gone to reduce the obligation owed by the Plaintiffs.

51. Both of the obligations Bank is claiming against the Debtor and Wife are for guarantees of loans to Keck Co. Acquisition, Inc. and Keck Co., Inc.

52. Bank only filed a Proof of Claim for one of the loans in the Keck Co., Inc. bankruptcy case.

53. Filing a Proof of Claim in the Keck Co., Inc. bankruptcy case would have allowed Bank to have a greater percentage of unsecured claims in the bankruptcy case and therefore receive a greater dividend from any recovery by the Trustee.

54. Bank has failed to take any action regarding the collection on certain accounts receivable listed in the bankruptcy case of Keck Co., Inc upon which Bank has claimed a lien.

55. Accordingly, Bank has failed to mitigate their damages and their claim should be reduced by the amount of the Proceeds recovered by the Trustee from the Sale of the assets of Keck Co., Inc minus the costs of sale by any amounts that could be determined to be collectable on the accounts receivable upon which Bank is claiming a lien.

## FOURTH CAUSE OF ACTION
### Determination of Property of the Estate and Debtor's Claim of Exempt Property

56.     The above-numbered paragraphs 1 through 55 are repled as if fully set forth herein.

57.     The Debtor and Wife own their residence and certain other real estate via Tenancy by the Entireties.

58.     Other than the secured obligations on their residence and that real estate the Debtor and Wife have no Joint Debt Obligations other than the Claims of Bank.

59.     As the Claims of Bank against the Debtor's Wife have been found to be in violation of the Equal Credit Opportunity Act, there are no Joint Debt Obligations of the Debtor and Wife.

60.     Accordingly the Debtors residence and any other real estate owned by the Debtor and Wife are properly owned as Tenancy by the Entireties and is exempt form being property of the estate.

**WHEREFORE**, the Debtor and Sherrie P. Westbrooks do hereby request that this Court enter an order finding:

1.      That the guaranty of the debt of Keck Co. Acquisition, Inc. and Keck Co., Inc. by Sherrie P. Westbrooks was obtained in violation of the Equal Credit Opportunity Act and therefore is found to be void as a debt obtained in violation of the Equal Credit Opportunity Act;

2.      Find that the Deed of Trust obtained in conjunction with the guaranty of Sherri P. Westbrooks was also obtained in violation of the Equal Credit Opportunity Act and as such is also void;

3.      Find that there is no joint debt obligation owed by Sherrie P. Westbrooks and the Debtor.  The property owned by Sherrie P. Westbrooks and the Debtor is owned as Tenants by the Entireties is properly found to be exempt pursuant to ownership by Tenants by the Entireties and therefore is not property of the estate and is not available to pay claims against the Debtor;

4.      Finding that   Bank is required to provide an accounting detailing all payments made on behalf of the debt obligation of Keck Co. Acquisition, Inc. and Keck Co., Inc. including any payments made by the Chapter 7 Trustee or any funds received by seizing other securities by other guarantors pledged on account of this debt or payments received by other guarantors on behalf of this debt;

5.      Enter an order finding that prior to the final claim owed by the Debtor to   Bank being determined,   Bank must marshal the assets and determine the amount to be paid from the Chapter 7 Trustee of Keck Co. Acquisition, Inc. and Keck Co., Inc. to   Bank such that   Bank does not receive a double payment from two guarantors;

6.      Deny the Claim of  Bank to the extent that it failed to mitigate its damages;

8

7.      Tax the costs of this action against  Bank; and

8.      For such further and other relief as this Court deems just and proper.

**THIS** the 14th day of July, 2010.


                                        */s/ J. Marshall Shelton*
                                        J. Marshall Shelton
                                        Attorney for the Debtor
                                        NCSB #31784

**OF COUNSEL:**

**IVEY, MCCLELLAN, GATTON & TALCOTT, L.L.P.**
Post Office Box 3324
Greensboro, North Carolina 27402
(336) 274-4658

9