UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KENNETH A. WESTBROOKS, | ) | Case No. 10-10672 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| KENNETH A. WESTBROOKS and wife, | ) | |
| SHERRIE P. WESTBROOKS, | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. No. 10-2032 |
| | ) | |
| vs. | ) | |
| | ) | |
| FNB UNITED CORP., a holding company | ) | |
| for COMMUNITYONE BANK, N.A., | ) | |
| DANIEL J. GILLESPIE, III, | ) | |
| NANCY W. GILLESPIE, and | ) | |
| BEVERLY A. CORBETT, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

This matter came before the Court on November 12, 2010, upon the Motion to Dismiss filed on August 16, 2010, by defendants FNB United Corp. ("FNB") and CommunityOne Bank, N.A. ("CommunityOne") (collectively the "Bank Defendants"). J. Marshall Shelton appeared on behalf of Kenneth A. Westbrooks and Sherrie P. Westbrooks, and Lacey M. Moore appeared on behalf of the Bank Defendants. For the reasons stated below, the Motion to Dismiss will be denied.

### I. JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District

Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), (C), and (K), which this Court may hear and determine.

## II. FACTS

Mr. Westbrooks is a member and owner of Keck Co. Acquisition Inc. ("Keck Acquisition") and Keck Co., Inc. ("Keck Co."), along with defendant Daniel J. Gillespie, and an individual named Andrew Corbett. While the facts alleged in both the Westbrooks' complaint and the Motion to Dismiss are not entirely clear, it appears that on February 28, 2001, Keck Acquisition and Keck Co. obtained a loan from Alamance National Bank in the principal amount of $950,000.00. The credit application on behalf of Keck Acquisition and Keck Co. was signed by the members and owners of Keck Acquisition. The purpose of the loan was to finance the acquisition of Keck Co. by Keck Acquisition.[1] As a condition of the loan, Alamance National Bank required the debtor, Mr. Westbrooks, and his wife, Mrs. Westbrooks, to execute an unconditional guaranty of the company debt, as well as a deed of trust securing the guaranty. The Westbrooks allege that Mrs. Westbrooks has no connection with or interest in Keck Co. or Keck Acquisition other than the fact that her husband is an owner, member, and employee of Keck Acquisition. Alamance National Bank also required the wives of the other members of Keck Acquisition to execute guaranties of the promissory note and to execute deeds of trust to secure those guaranties.

The Westbrooks allege that, prior to acquiring the guaranties of the three wives, Alamance

---

[1]The Westbrooks' complaint states that the purpose of the loan was to finance the purchase of Keck Co. by Keck Acquisition; however, it also states that both Keck Co. and Keck Acquisition were on the credit application. The Motion to Dismiss confirms that both companies were on the credit application.

National Bank made no determination of the independent creditworthiness of Keck Acquisition or the members of Keck Acquisition, nor did the bank offer any explanation to Mr. Westbrooks, Mr. Gillespie, or Mr. Corbett as to why they were not independently creditworthy before requiring their wives to sign personal guaranties and deeds of trust.

On April 10, 2003, Keck Acquisition entered into a Modification Agreement with Alamance National Bank that modified the terms of the original loan.  The Westbrooks allege that Alamance National Bank did not give the three wives notice of the modification agreement, yet the bank continued to assert that they were liable under the modified agreement and demanded that they execute additional deeds of trust, all without making an independent determination regarding the creditworthiness of their husbands.

On April 20, 2004, Keck Acquisition executed an additional promissory note in favor of Alamance National Bank in the principal amount of $300,750.00.  The Westbrooks allege that the bank again required them to sign a personal guaranty of the promissory note and another deed of trust securing the guaranty without making an independent determination of their creditworthiness or offering an explanation as to why Mr. Westbrooks alone was not independently creditworthy. Later in 2004 and on April 10, 2005, Keck Acquisition entered into Modification Agreements with the bank, which modified the terms of the April 20, 2004 promissory note.[2]  Each time, Alamance National Bank required Mrs. Westbrooks' signature on the guaranty and additional deeds of trust[3]

---

[2]The Westbrooks allege that the Modification Agreements concerning the April 2004 promissory note were executed on April 10, 2004 and April 10, 2005; however, they also allege that the April 2004 note was originally executed on April 20, 2004, which is after the first Modification Agreement was allegedly signed.

[3]It is not clear if Mrs. Westbrooks and the other wives were required to sign new guaranties and deeds of trust each time the loans were modified, or whether they were simply

3

without making a determination that Mr. Westbrooks was not independently creditworthy or offering an explanation to the Westbrooks as to why he was not independently creditworthy.

The Westbrooks allege that on May 1, 2006, Keck Acquisition executed a promissory note in favor of First National Bank and Trust ("First National Bank") that renewed the obligations of the April 2004 and April 2005 notes. According to the Westbrooks, the May 1, 2006 note purports to make First National Bank the successor in interest to the initial April 2004 and April 2005 notes as well as the guaranties executed along with those notes. The Westbrooks, however, allege that neither of them personally signed the May 1, 2006 note.

The Westbrooks allege that CommunityOne acquired both promissory notes from Alamance National Bank[4] and attempted to collect on the guaranties. On June 23, 2009, Keck Acquisition and Keck Co. each filed a Chapter 7 bankruptcy (case numbers 09-11143 and 09-11144, respectively). On July 8, 2009, the Chapter 7 trustee for Keck Co. moved for the authority to auction all of the assets of the company. As a result of this motion, CommunityOne filed a response in which it claimed an interest in the assets of Keck Co. The Keck Co. trustee and CommunityOne agreed to allow the sale and to transfer the claims of liens to the proceeds of the sale. To date, $10,046.55 has been disbursed to CommunityOne pursuant to this agreement. In addition, CommunityOne took

---

asked to reaffirm the original guaranties and deeds of trust. The Complaint simply states that each time a Modification Agreement was executed, the wives were required to sign "a" guaranty and "a" deed of trust. The Motion to Dismiss contains no information on this subject; however, at the hearing the Westbrooks alleged that the wives were, in fact, required to execute new guaranties and deeds of trust each time the loans were modified.

[4]In its pleading in the Keck Co. bankruptcy, CommunityOne claimed to be the "successor to Alamance National Bank" by way of merger. At the hearing, counsel for the Bank Defendants explained that Alamance National Bank merged with CommunityOne and that FNB is the parent company of Community One. Counsel for the Bank Defendants argued that CommunityOne is the proper defendant in this adversary proceeding, not FNB.

possession and control of a certificate of deposit pledged by Mr. Corbett as security for the obligation of Keck Acquisition that he guaranteed--the same promissory note purportedly guaranteed by the Westbrooks.

The Westbrooks alleged that they made repeated requests for a complete accounting of the outstanding obligations that they owe to CommunityOne, but they have received no accounting. Other than their guaranty of the debts of Keck Acquisition to CommunityOne and the secured debts on their residence, the Westbrooks allege that they have no joint debts.

### III. DISCUSSION

On April 13, 2010, Mr. Westbrooks filed a Chapter 13 bankruptcy. On July 14, 2010, the Westbrooks filed an adversary proceeding against FNB, CommunityOne, Mr. Gillespie, Nancy W. Gillespie, and Beverly A. Corbett, alleging violations of the Equal Credit Opportunity Act ("ECOA"). The Westbrooks' complaint requests, inter alia, that the Court (1) find that the Bank Defendants violated the ECOA and (2) void the guaranties and deeds of trust signed by Mrs. Westbrooks.

On August 16, 2010, the Bank Defendants filed their Motion to Dismiss. They argue that: (1) the Westbrooks do not qualify as "applicants" under the ECOA because they were merely guarantors and because the loan was extended to Keck Acquisition, so that Mr. Westbrooks, individually, was not denied credit; (2) the ECOA claims of Mrs. Westbrooks are barred by the statute of limitations; and (3) the relief requested by the Westbrooks–specifically, the cancellation of the guaranty and the deed of trust securing it–is not a remedy that is available under the ECOA. The Bank Defendants have consented to this Court's jurisdiction over the claims of Mrs. Westbrooks, a non-debtor.

In response, the Westbrooks argue that: (1) guarantors have standing to bring claims under the ECOA, or, in the alternative, Mr. Westbrooks may have been a co-applicant; (2) the Westbrooks' ECOA claims are brought defensively and therefore are not subject to the statute of limitations under the statute, or, in the alternative, the practice of the Bank Defendants of requiring spousal signatures for each loan modification constitutes a continuing violation under the ECOA that starts the time period running anew; and (3) the Court may void the guaranty and deed of trust pursuant to its power to grant equitable relief under the ECOA.

### A. The Standard Governing a Rule 12(b)(6) Motion

In order to survive dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When deciding whether to grant a Rule 12(b)(6) motion to dismiss, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 129 S.Ct. at 1949. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950. Furthermore, the plaintiff's factual allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 555). The test is not whether the claimants will ultimately prevail but whether they are entitled to offer evidence to support their claims. In re Bernstein, 259 B.R. 555, 556 (Bankr. D. N.J. 2001).

### B. The ECOA Generally

The Equal Credit Opportunity Act, codified at 15 U.S.C. § 1691 et. seq., provides in

pertinent part:

> (a) It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction-(1) on the basis of race, color, religion, national origin, sex or marital status....

15 U.S.C. § 1691(a)(1).  Section 1691b of the ECOA gives the Board of Governors of the Federal Reserve System the authority to "prescribe regulations to carry out the purposes of this subchapter."  15 U.S.C. § 1691b.  These regulations, known collectively as Regulation B, provide in pertinent part:

> (d) Signature of spouse or other person.
> (1) Rule for qualified applicant. Except as provided in this paragraph, <u>a creditor shall not require the signature of an applicant's spouse</u> or other person, other than a joint applicant, on any credit instrument <u>if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested</u>.
> . . .
> (5) Additional parties. If, under a creditor's standards of creditworthiness, the personal liability of an additional party is necessary to support the extension of the credit requested, a creditor may request a cosigner, guarantor, or the like. <u>The applicant's spouse may serve as an additional party, but the creditor shall not require that the spouse be an additional party</u>.

12 C.F.R. § 202.7 (emphasis added).  Thus, in order to comply with the provisions of the ECOA and Regulation B, a bank must make a determination that an applicant is not independently creditworthy before requiring the signature of the applicant's spouse.  <u>Silverman v. Eastrich Multiple Investor Fund, L.P.</u>, 51 F.3d 28, 31-33 (3d Cir.1995); <u>Eure v. Jefferson Nat. Bank</u>, 448 S.E.2d 417, 420 (Va. 1994).

## C.  The Westbrooks Are "Applicants" Under the ECOA

A review of the case law makes clear that the Westbrooks have standing to bring claims as "applicants" under the ECOA, even though they are only guarantors of the loan made by Alamance National Bank to Keck Acquisition, and even though the credit extended was a business loan.

The original definition of "applicant" in the ECOA excluded "guarantors, sureties, endorser,

and similar parties." Douglas County Nat. Bank v. Pfeiff, 809 P.2d 1100, 1002 (Colo. App. 1991) (citing Morse v. Mut. Fed. Sav. & Loan Ass'n, 536 F.Supp. 1271, 1278 (D. Mass. 1982); Marine American State Bank v. Lincoln, 433 N.W.2d 709, 713 (Iowa 1988)).  However, the definition of "applicant" was amended in 1985 specifically to include these parties.  Id.; see also Bank of the West v. Kline, 782 N.W.2d 453, 457 (Iowa 2010); Durdin v. Cheyenne Mountain Bank, 98 P.3d 899, 902 (Colo. App. 2004); Ford v. Citizens & S. Nat'l Bank, 700 F. Supp. 1121, 1123 (N.D. Ga. 1988).

Furthermore, the ECOA specifically applies to the extension of business credit.  See 15 U.S.C. § 1691(a); 12 C.F.R. § 202.2(g).  The official commentary to the 1985 revisions to Regulation B provides that "a creditor may not take the business applicant's marital status into account, and may not request information about a married applicant's spouse except when the spouse has some connection with the business. A creditor must comply with the rules that prohibit requiring the spouse to guarantee the loan." Official Staff Commentary to the Revision of Regulation B to the Equal Credit Opportunity Act, 50 Fed. Reg. 48,018, 48,019 (November 20, 1985).  "[I]f an individual applies for credit on behalf of a closely-held business and, in so doing, uses his or her own individual assets to secure this credit, then that individual is also an 'applicant' within the meaning" of the ECOA.  Douglas County Nat. Bank, 809 P.2d at 1003; see also Marine American State Bank, 433 N.W.2d at 712 (bank violated ECOA by requiring wife's signature on promissory note extending loan to husband's company).

This case similarly involves an extension of credit to a husband's business, with the bank requiring the wife to sign a guaranty of the debt.  On this basis alone, the Westbrooks have standing to bring claims under the ECOA as guarantors of debt incurred by a closely-held business.  As such,

8

the issue of whether Mr. Westbrooks was a co-applicant for credit along with his company is irrelevant to the Westbrooks' standing in this case.

### D. The ECOA Claims of the Westbrooks Are Not Barred by the Statute of Limitations Because They Are Asserted Defensively

The ECOA provides a two year statute of limitations for ECOA claims. See 15 U.S.C. § 1691e(f). As the Westbrooks note in their response to the Motion to Dismiss, a recent amendment has extended the statute of limitations to five years. Whether this extension applies retroactively is unclear. See Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1085(7), 124 Stat. 1376, 2085 (2010). However, the case law indicates that the statute of limitations does not apply to bar claims under the ECOA when such claims are brought defensively in response to an affirmative action by the creditor to collect on the debt. See Silverman, 51 F.3d at 31-33; Hammons v. Ehney, 924 S.W.2d 843, 852 (Mo. 1996); Bolduc v. Beal Bank, 994 F. Supp. 82, 92 (D.N.H. 1998); Am. Sec. Bank, N.A. v. York, No. 91-1212(GHR), slip op. at 3 (D.D.C. Sept. 1, 1992)(1992 WL 237375); FDIC v. Notis, 602 A.2d 1164, 1166 (Me. 1992); In re Remington, 19 B.R. 718, 718 (Bankr. D. Colo. 1982).

Although the Westbrooks have filed a complaint alleging violations of the ECOA, such claims are, for all practical purposes, a defense to the proof of claim filed by CommunityOne in the bankruptcy of Mr. Westbrooks. While there are no cases directly on point, courts have held that a complaint can contain ECOA defenses that would otherwise be barred by the statute of limitations. See, e.g., Silverman, 51 F.3d at 32 (holding that "[a]lthough plaintiff brought this suit in federal court, her ECOA claim was raised in direct response to Eastrich's state court confession of judgment, which did not require or provide for an answering pleading"); see also Nowicki v. Green, No. 98-5100, slip op. at 2-3 (E.D. Pa. May 12, 1999) (1999 WL 305243) (holding that the plaintiffs could

9

raise their otherwise time-barred ECOA claims in a complaint because they were brought in response to confession of judgment and mortgage foreclosure proceedings, which did not offer them the opportunity for defensive pleadings).

Because Rule 7001 requires that certain objections to claims be brought as adversary proceedings, see Fed. R. Bankr. P. 7001 (1), (2) & (9), the Westbrooks' complaint is in effect an objection or response to the proof of claim filed by the Bank Defendants, which is itself an attempt to collect the debt owed to them. Silverman, 51 F.3d at 32; Nowicki, slip op. at 2-3. Accordingly, the ECOA claims of Ms. Westbrooks are not barred by the statute of limitations, regardless of whether the applicable period is two years or five years. As such, the court need not address whether the loan modifications constituted a "continuing violation" under the ECOA.

### E. Whether the Court May Void the Guaranty and Deed of Trust is Irrelevant to its Consideration of a Motion to Dismiss Pursuant to Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), a court must assume the veracity of well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S.Ct at 1950. Accordingly, the relevant inquiry is not whether the Westbrooks will ultimately prevail but whether they are entitled to offer evidence to support their claims. Bernstein, 259 B.R. at 556. The Westbrooks seek not only the cancellation of the guaranty and the deed of trust securing it, but also other relief, including a general request for "such further and other relief as this Court deems just and proper." Thus, since the Westbrooks have sufficiently pled facts that would plausibly give rise to an entitlement of at least some relief under the ECOA should they be successful on the merits, the Court need not determine, in the context of a motion to

dismiss, whether all of their claims for relief may be granted.[5]

---

[5]It is unclear whether a court may invalidate obligations based on an ECOA violation. The ECOA explicitly authorizes aggrieved applicants to bring a civil action in federal court for actual damages. CMF Virginia Land, L.P. v. Brinson, 806 F. Supp. 90, 95 (E.D. Va. 1992). However, Section 1691e(c) also provides that:

> Upon application by an aggrieved applicant, the appropriate United States district court or any other court of competent jurisdiction may grant such equitable and declaratory relief as is necessary to enforce the requirements imposed under this title.

15 U.S.C. § 1691e(c). Some courts have been reluctant to read this power as granting them "the sweeping power to invalidate [an] underlying Guaranty. . . ." CMF Virginia Land, 806 F. Supp. at 95. "Invalidation of the debt itself is a remedy too drastic for the Court to implement simply by reading between the lines of the ECOA." Id.; see also F.D.I.C. v. 32 Edwardsville, Inc., 873 F. Supp. 1474, 1480 (D. Kan.1995); Resolution Trust Corp. v. Schonacher, 844 F. Supp. 689, 696 (D. Kan. 1994); Riggs Nat. Bank of Washington, D.C. v. Linch, 829 F. Supp. 163, 169 (E.D. Va. 1993); Diamond v. Union Bank & Trust of Bartlesville, 776 F. Supp. 542, 544 (N.D. Okl. 1991). Nonetheless, some courts have used this provision to cancel liability on the debt, especially when the ECOA violation is brought as a defense to avoid the obligation of a contract. See, e.g., FDIC v.Medmark Inc., 897 F. Supp. 511, 514 (D. Kan. 1995) (citing Silverman, 51 F.3d at 31-33); Integra Bank/Pittsburgh v. Freeman, 839 F. Supp. 326, 329-30 (E.D. Pa. 1993); Eure, 448 S.E.2d at 420.

At least one court has resolved this split in the case law by refusing to invalidate the debt as a matter of law, but rather allowing the applicants to prove actual damages in the amount of the guaranty, which would have the practical effect of eliminating the underlying debt. CMF Virginia Land, 806 F. Supp. at 95. The court stated that

> [p]arties who successfully demonstrate egregious ECOA violations may well be entitled to damages which equal the amount of the instrument for which they would otherwise be liable. In those cases, the amount of the underlying debt and the ECOA damages will cancel each other out, and the defendant will wind up owing nothing to the lender who violated the ECOA. While this would have the same result as cancelling the debt from the outset, the Court's approach is far more consistent with the statutory framework of the ECOA and will extricate district courts from their current interpretive quagmire, in which they are asked to infer the existence of a rather extraordinary remedy nowhere present in the language of a statute which already sets forth the specific remedies it contemplates for addressing violations thereof.

Id. at 95-96.

As such, it appears that the Court may cancel the guaranty if the Westbrooks are able to successfully prove a violation of the ECOA–either as a matter of law or, as a practical matter, by

## IV. CONCLUSION

The Westbrooks have sufficiently pled facts that state a claim under the ECOA that the Bank Defendants did not make a determination of independent creditworthiness of Keck Acquisition or Mr. Westbrooks before requiring Mrs. Westbrooks to sign a guaranty. Because none of the grounds raised by the Bank Defendants present a bar to the Plaintiffs' properly pled ECOA claims, the Bank Defendants' Motion to Dismiss will be denied.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

---

awarding them recoupment in the amount of the guarantee. Nevertheless, the request of such relief is not a bar to the Westbrooks' claims.

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KENNETH A. WESTBROOKS, | ) | Case No. 10-10672 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| KENNETH A. WESTBROOKS and wife, | ) | |
| SHERRIE P. WESTBROOKS, | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. No. 10-2032 |
| | ) | |
| vs. | ) | |
| | ) | |
| FNB UNITED CORP., a holding company | ) | |
| for COMMUNITYONE BANK, N.A., | ) | |
| DANIEL J. GILLESPIE, III, | ) | |
| NANCY W. GILLESPIE, and | ) | |
| BEVERLY A. CORBETT, | ) | |
| | ) | |
| Defendants. | ) | |

## PARTIES IN INTEREST

J. Marshall Shelton, Esq.

Lacey M. Moore, Esq.

13